**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| FRANKLIN OSVALDO RUBIO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 25-1784 (RBW) |
| | ) | |
| CREDENCE MANAGEMENT | ) | |
| SOLUTIONS, LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OPINION**

The plaintiff, Franklin Osvaldo Rubio, proceeding pro se, brings this civil action against

the defendant, Credence Management Solutions, LLC, asserting that the defendant: (1) violated

Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, by discriminating

against him based on his race and national origin; creating a hostile work environment based on

his race and national origin; and retaliating against him for engaging in protected activity, see

Amended Complaint ("Am. Compl.") at 3–4, ECF No. 12; (2) violated the District of Columbia

Human Rights Act ("DCHRA"), D.C. Code § 2-1402.11, by wrongfully terminating him, see id.

at 4; and (3) defamed him under District of Columbia common law, see id.  Currently pending

before the Court is the Defendant's Motion to Dismiss Amended Complaint ("Def.'s Mot."),

ECF No. 14, pursuant to Federal Rule of Civil Procedure 12(b)(6).  Upon careful consideration

of the parties' submissions,[1] the Court concludes for the following reasons that it must grant the

defendant's motion.

---

[1] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the exhibits filed by the plaintiff following the filing of his Amended Complaint, see Notice of Filing of Exhibits ("Pl.'s Exs."), ECF No. 13; (2) the Memorandum of Points and Authorities in Support of Defendant's

(continued . . .)

## I.    BACKGROUND

### A. Factual Background

The following allegations are derived from the plaintiff's Amended Complaint, unless otherwise specified.  The plaintiff identifies himself as a "Hispanic/Latino male of Salvadoran origin."  See Am. Compl. at 1.  He alleges that he was employed by the defendant, Credence Management Solutions, LLC, id. at 1, as a "System Administrator" from November 27, 2023, to May 3, 2024, when he was terminated by his immediate supervisor, Richard Pokorny, and an unnamed Human Resources ("HR") representative, see id. at 2.

The plaintiff alleges that, prior to his termination, he "was placed on a Performance Improvement Plan [('PIP')] on March 14, 2024, for [allegedly] trivial reasons such as a 30-minute [delay in providing a Microsoft] Teams response, child-care related absences, and a disputed remote work schedule."  Id.  The plaintiff also alleges that, at some point during his approximately six-month term of employment, he was assigned to shadow another systems administrator who he alleges was rarely at the office, rendering the shadow-training impossible.  Id.  Nonetheless, the plaintiff claims he "was criticized as if he failed his duties" despite being unable to shadow the other systems administrator.  Id.

At bottom, the plaintiff contends that he "was held to stricter standards" than "[o]ther systems administrators [who] engaged in similar conduct, such as repeated absences and flat tire excuses, but were not disciplined."  Id.  And, the plaintiff appears to allege that he "was placed on [the] PIP after complaining" about these stricter standards.  Pl.'s Opp'n at 2.  Moreover, the

---

(. . . continued)
Motion to Dismiss Amended Complaint ("Def.'s Mem."), ECF No. 14–1; (3) the Plaintiff's Opposition to Defendant's Motion to Dismiss ("Pl.'s Opp'n"), ECF No. 20; and (4) the Defendant's Reply to Plaintiff's Opposition to Motion to Dismiss Plaintiff's Amended Complaint ("Def.'s Reply"), ECF No. 19.

plaintiff alleges that during the PIP meeting to discuss his purported performance issues, Mr. Pokorny "instructed [him] not to mention [his] coworkers' absences . . . ."  Am. Compl. at 2.

These purportedly unequal standards do not appear to be the only conflict that existed between the plaintiff and Mr. Pokorny.  The plaintiff also alleges that, at some point during his employment, he "complained to [Mr. Pokorny's] supervisor about [Mr. Pokorny's] unfair treatment and badmouthing of employees[,]" id., which he alleges included "mock[ing] employees' accents[ and] hygiene[,]" id. at 3, and "follow[ing the p]laintiff around the office, even into the restroom[,]" id.

Ultimately, as previously indicated, the plaintiff alleges that on May 3, 2024, he was terminated by Mr. Pokorny and an unnamed HR representative.  See id. at 2.  According to the plaintiff, he was never informed, in writing or otherwise, that he had failed to meet the requirements set forth in the PIP, see id. at 3, and he asserts that, to the contrary, "[h]e was terminated despite meeting [the PIP's] requirements[,]" id.  The plaintiff further alleges that he subsequently learned from a former colleague that, "[a]fter [his] termination, [Mr. Pokorny] instructed employees not to contact [the p]laintiff."  Id.

Subsequently, on April 9, 2025, HR representative Abby Smith allegedly told Anna Rose Kelly Tedrow, "an associate" of the plaintiff, that the plaintiff had been terminated for performance reasons.[2]  Id.  According to the plaintiff, "[t]his disclosure was unauthorized" and occurred before the defendant obtained "any release [of information from him]."  Id.  Sometime after the alleged April 9, 2025 disclosure, the plaintiff represents that the defendant contacted him and requested that he sign a "release for salary information[.]"  Id.  The plaintiff contends

---

[2] The plaintiff identifies "Anna Tedy" as the associate to whom the disclosure was allegedly made, see Am. Compl. at 2, but later identifies the same individual as "Anna Rose Kelly Tedrow[,]" id. at 3.  In his opposition to the defendant's motion to dismiss, the plaintiff also refers to this same alleged disclosure, but he alleges that it was made to "a third party verifier[,]" who appears to be Ms. Tedrow.  Pl.'s Opp'n at 2.

3

that this subsequent request for release indicates the defendant knew the alleged April 9, 2025, disclosure was unauthorized and premature.  Id.  Finally, the plaintiff contends that the defendant reported his job performance as "poor" to a prospective employer and "advised [the plaintiff to] remov[e] [the defendant] as a [job] reference."  Id.

As a result of his termination, the plaintiff represents that he has had to turn to other, less stable and less lucrative employment, including "gig work such as DoorDash and Instacart," to support his family.  Id.  The plaintiff contends that he has "suffered approximately $121,656 in back pay losses [up] to [the] date[ of the filing of his Amended Complaint], plus emotional distress, anxiety, depression, and financial hardship."  Id.

**B. Administrative and Procedural Background**

On April 22, 2025, nearly one year after his termination, the plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") based on his race and national origin, as well as a charge of retaliation for engaging in protected activity.  See Pl.'s Exs., Exhibit ("Ex.") A (EEOC Charge of Discrimination ("EEOC Charge")) at 2, ECF No. 13–1.  Subsequently, on May 6, 2025, the EEOC issued the plaintiff a notice of his right to sue. See id., Ex. B (EEOC Right to Sue Letter ("Right to Sue Letter")) at 2, ECF No. 13–1.

Then, on June 6, 2025, the plaintiff filed his original Complaint in this case.  See Complaint for Employment Discrimination and Retaliation ("Compl.") at 1, ECF No. 1.  On August 26, 2025, the Court granted the defendant's motion for a more definite statement, see Order at 1 (Aug. 26, 2025), ECF No. 8, and ordered the plaintiff to file an amended complaint that clearly set forth:

> (1) the specific facts regarding his termination; (2) the type of employment discrimination claims he sought to advance; (3) the specific facts underlying his employment discrimination claims; (4) his efforts to exhaust his administrative remedies; and (5) information regarding the content of any allegedly defamatory

statement including the date and location of such statement(s), the identity of the speaker and how any such statement was communicated, and information bearing on the falsity of that statement.

Id. at 4–5.

In response to the Court's Order, on August 29, 2025, the plaintiff filed his Amended Complaint. See Am. Compl. at 1. The defendant then filed its motion to dismiss the amended complaint on September 19, 2025. See Def.'s Mot. at 1. On October 14, 2025, the plaintiff filed his opposition to the defendant's motion to dismiss, see Pl.'s Opp'n at 1, and, on October 23, 2025, the defendant filed its reply to the plaintiff's opposition, see Def.'s Reply at 1.

## II.    STANDARD OF REVIEW

A Rule 12(b)(6) motion tests whether a complaint "state[s] a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw [a] reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

In evaluating a motion to dismiss under Rule 12(b)(6), "the Court must construe the complaint in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged." Hettinga v. United States, 677 F.3d 471, 476 (D.C. Cir. 2012) (internal quotation marks omitted) (quoting Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979)). While the Court must "assume [the] veracity" of any "well-pleaded factual allegations" in a complaint, conclusory allegations "are not entitled to the assumption of truth." Iqbal, 556 U.S. at 679. Thus, "[t]hreadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice." Id. at 678 (citing Twombly, 550 U.S. at 555). Accordingly, the Court need not "accept legal conclusions cast as factual allegations[,]" or "inferences drawn by [the] plaintiff if those inferences are not supported by the facts set out in the complaint[.]" Hettinga, 677 F.3d at 476. The Court "may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint[,] and matters of which [the Court] may take judicial notice." Equal Emp. Opportunity Comm'n v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997). Finally, a defendant may properly raise an affirmative defense in a motion to dismiss only "when the facts that give rise to the defense are clear from the face of the complaint." Smith-Haynie v. District of Columbia, 155 F.3d 575, 578 (D.C. Cir. 1998).

The Court is mindful of the fact that the plaintiff in this matter is proceeding pro se, and that the pleadings of pro se parties are "to be liberally construed, [and] a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotation marks and citations omitted). And, because the plaintiff is proceeding pro se, the Court is also mindful that all of his factual allegations, whether contained in the complaint or other filings in the matter, should be read together in considering whether to grant a dispositive motion. See Richardson v. United States, 193 F.3d 545, 548 (D.C. Cir. 1999); Brown v. Whole Foods Mkt. Grp., Inc., 789 F.3d 146, 152 (D.C. Cir. 2015) (concluding the same in the context of a motion to dismiss pursuant to Rule 12(b)(6)). However, just like parties represented by attorneys, a pro se litigant "must comply with the Federal Rules of Civil Procedure and this Court's local rules[.]" Hedrick v. Fed. Bureau of Investigation, 216 F. Supp. 3d 84, 93 (D.D.C. 2016) (citations omitted); see McNeil v. United States, 508 U.S. 106, 113 (1993) ("[W]e have never suggested that procedural

6

rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel.").

### III.    ANALYSIS

The defendant moves to dismiss the plaintiff's Amended Complaint under Rule 12(b)(6), arguing that: (1) the plaintiff's Title VII and DCHRA claims "are time-barred under the applicable statute[s] of limitations[,]" Def.'s Mem. at 2; and (2) the plaintiff's defamation claim "is factually and legally insufficient to state a claim upon which relief could be granted[,]" id.  In response, the plaintiff argues that his DCHRA claim was timely filed, and that although his Title VII claims were filed outside the applicable timeframe, he is entitled to equitable tolling "because he diligently pursued his rights and only later discovered key facts confirming [the d]efendant's unlawful conduct." Pl.'s Opp'n at 1.  The plaintiff further argues that he has sufficiently pleaded his defamation claim.  See id.

The Court will first address whether the plaintiff's Title VII and DCHRA claims are time-barred under the applicable statutes of limitations and, if so, whether equitable tolling applies to these claims.  Because the Court ultimately concludes that the plaintiff's Title VII and DCHRA claims are time-barred and that the plaintiff has failed to show that he is entitled to equitable tolling as to those claims, the Court need not address the defendant's other arguments in support of dismissal of the plaintiff's Title VII and DCHRA claims.  Finally, the Court will determine whether the plaintiff has adequately stated his common law defamation claim.

**A.    Whether the Plaintiff's Title VII and DCHRA Claims Are Time-Barred Under the Applicable Statutes of Limitations (Counts I, II, III, and V)**

The defendant first argues that the plaintiff's Title VII and DCHRA claims are all clearly time-barred because the plaintiff's submissions establish that the plaintiff's original Complaint in this case was not filed within the applicable limitations periods for the plaintiff to bring his

claims under those statutes.  See Def.'s Mem. at 2.  In response, the plaintiff appears to argue: (1) that the Court should not assess timeliness at the motion-to-dismiss stage, see Pl.'s Opp'n at 2; (2) that even if the Court does assess timeliness at this time, his Title VII claims are either timely because he filed this lawsuit within 90 days of receiving his Right to Sue Letter from the EEOC, see id., or they are subject to equitable tolling because he "diligently attempted to file [his EEOC charge] earlier and did not learn [of] critical facts until an associate confirmed [that] HR had disclosed damaging information [about him] without [his] authorization[,]" id.; and (3) that his DCHRA claim is timely because "[t]he one-year [statute of limitations] period tolled while the EEOC charge was pending[,]" and he "filed [his complaint] shortly after receiving his Right-to-Sue letter[,]" id. at 2.

"Title VII '[c]omplainants must timely exhaust the[ir] administrative remedies before bringing their claims to court.'"  Payne v. Salazar, 619 F.3d 56, 65 (D.C. Cir. 2010) (alterations in original) (quoting Bowden v. United States, 106 F.3d 433, 437 (D.C. Cir. 1997)).  "In the District of Columbia, [ ] an EEOC charge must be filed within 300 days of the date of the allegedly discriminatory/retaliatory act."  Duberry v. Inter-Con Sec. Sys., Inc., 898 F. Supp. 2d 294, 298 (D.D.C. 2012); see 42 U.S.C. § 2000e-5(e)(1); see also Craig v. District of Columbia, 74 F. Supp. 3d 349, 361 (D.D.C. 2014) ("Ordinarily, . . . a plaintiff alleging a violation of Title VII must file an EEOC charge within 180 days of the date that the allegedly discriminatory act occurred[; however,] [i]n the District of Columbia . . . a 'worksharing agreement' between the EEOC and the [District's Office of Human Rights ('DCOHR')] results in the automatic cross-filing of an EEOC complaint with the [DCOHR], thereby extending the filing deadline for plaintiffs in the District to 300 days." (citations omitted)).

And, in June 2025, when the plaintiff filed his original Complaint in this case, the DCHRA had a one-year statutory deadline for filing a judicial complaint, see D.C. Code § 2-1403.16(a), but that the filing of an administrative complaint with the DCOHR tolled the DCHRA's statute of limitations for bringing a judicial complaint until the DCOHR issued the plaintiff a notice of his right to sues, see id. § 2-1403.16(b)(2).[3]  The worksharing agreement between the EEOC and DCOHR also causes the timely filing of a complaint with the EEOC to trigger the DCHRA's tolling provision.  See Alexander v. Wash. Metro. Area Transit Auth., 826 F.3d 544, 551 (D.C. Cir. 2016) (per curiam).

However, "Title VII's time limit on filing a complaint with the EEOC is not jurisdictional and is subject to 'estoppel[] and equitable tolling,'" Currier v. Radio Free Europe/Radio Liberty, Inc., 159 F.3d 1363, 1367 (D.C. Cir. 1998) (quoting Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982)), although "only in extraordinary and carefully circumscribed instances[,]" Smith-Haynie, 155 F.3d at 580.  Relevant here, "a litigant is entitled to equitable tolling of a statute of limitations only if the litigant establishes two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way and prevented timely filing." Menominee Indian Tribe of Wisc. v. United States, 577 U.S. 250, 255 (2016).  On the other hand, "the principles of equitable tolling . . . do not extend to what is at best a garden variety claim of excusable neglect." Irwin v. Dep't of Veterans Affs., 498 U.S. 89, 96 (1990).  And, the plaintiff bears the burden of demonstrating a basis for equitable tolling. See McAlister v. Potter, 733 F. Supp. 2d 134, 143–44 (D.D.C. 2010) (finding that equitable

---

[3] The DCHRA was recently amended to enlarge the statute of limitations to a two-year period.  See § 2–1403.16(a); see also Valentine v. Geo. Wash. Univ., No. 24-cv-1081 (RC), 2025 WL 2029802, at *5 n.5 (D.D.C. July 21, 2025) ("The D.C. Council has recently established a two-year statute of limitations for DCHRA claims, but that change does not apply retroactively."); Payne v. D.C. Gov't, 722 F.3d 345, 352 (D.C. Cir. 2013) (noting that statutes are construed as having only prospective operation absent clear legislative intent that the statute should be applied retroactively).

considerations were not applicable because the plaintiff failed to explain or raise an excuse for her late filing).

Here, the plaintiff alleges that he was terminated on May 3, 2024, see Am. Compl. at 2, and therefore, he had 300 days from that date to file his EEOC charge, i.e., until February 27, 2025, in order for the claims relating to acts that occurred during his employment to be actionable under Title VII.[4]  However, the plaintiff's Amended Complaint and associated exhibits establish that he did not file his EEOC Charge until April 22, 2025.  See Pl.'s Exs., Ex. A (EEOC Charge) at 2.  Thus, it is "clear from the face of the complaint[,]" Smith-Haynie, 155 F.3d at 578, that his claims are untimely under Title VII's statutory deadline for filing an EEOC charge, and thus, the Court must dismiss those claims even at this early stage of the case unless equitable tolling is applicable.[5]

Similarly, the plaintiff was required to file his DCHRA wrongful termination lawsuit within one year of his May 3, 2024, termination, unless he brought an administrative complaint, thus tolling the limitations period for filing suit.  On April 22, 2025, 354 days after his termination, the plaintiff filed his EEOC Charge, see Pl.'s Exs., Ex. A (EEOC Charge) at 2, tolling the one-year statute of limitations until May 6, 2025, when the EEOC dismissed the plaintiff's charge and issued the plaintiff his Right to Sue letter, see id., Ex. B (Right to Sue Letter) at 1.  The plaintiff then filed his original complaint in this case on June 6, 2025, 31 days after the EEOC dismissed his administrative charge.  See Compl. at 1.  Thus, in total, the

---

[4] Although the plaintiff alleges that the defendant disseminated damaging information about him after he was terminated, that disclosure is the basis for his defamation claim, and not any of his employment discrimination claims, and was not included in his EEOC Charge.  See Pl.'s Exs., Ex. A (EEOC Charge) at 1.

[5] Although the plaintiff argues that his lawsuit is timely because he filed it within 90 days of receiving his Right to Sue letter, his reliance on that separate deadline is inapposite because the plaintiff failed to file his EEOC Charge in a timely manner in the first instance.

plaintiff waited 385 days to bring suit under the DCHRA, exceeding the one-year statute of limitations. Accordingly, the plaintiff's DCHRA claim is also time-barred unless he is entitled to equitable tolling.

For the following reasons, the Court concludes that the plaintiff has not established that he is entitled to equitable tolling as to any of his employment discrimination claims. As indicated previously, the plaintiff contends that he is entitled to equitable tolling regarding his Title VII claims because he "diligently attempted to file earlier and did not learn critical facts until an associate confirmed [that an] HR [representative] had disclosed damaging information without [his] authorization." Id. However, the plaintiff does not provide any explanation regarding how he "diligently attempted" to file his EEOC Charge before the statutory filing deadline. See Pl.'s Opp'n at 1. Nor does the plaintiff explain how "some extraordinary circumstances stood in his way and prevented timely filing." Menominee Indian Tribe of Wisc., 577 U.S. at 255. To the contrary, the plaintiff's assertions regarding the "damaging" disclosure of information appears to relate to his common law defamation claim, not any of his Title VII claims. See Pl.'s Opp'n at 1. Moreover, because the alleged disclosure did not form a part of the basis for his EEOC Charge, it had no bearing on his ability to file his administrative charge. See Pl.'s Exs., Ex. A (EEOC Charge) at 1 (describing the basis for the plaintiff's claims). Therefore, the plaintiff has failed to establish that he is entitled to equitable tolling of Title VII's statutory deadlines. And, although the plaintiff does not explicitly argue that his DCHRA claim is subject to equitable tolling, the Court concludes that equitable tolling is inapplicable to this claim for the same reasons as his Title VII claims. Accordingly, the Court must dismiss the plaintiff's Title VII and DCHRA claims as untimely.

11

**B.      Whether the Plaintiff Has Stated a Claim for Defamation (Count IV)**

The Court next addresses the plaintiff's common law defamation claim based on his

allegation that Ms. Smith informed Ms. Tedrow "that [the p]laintiff had been terminated due to

performance reasons[,]" Am. Compl. at 3, or "poor performance[,]" Pl.'s Opp'n at 2; and (2) the

purported report by the defendant to an unnamed prospective employer of the plaintiff's alleged

"poor performance[,]"[6] Am. Compl. at 3.  The defendant argues that the Court should dismiss

the plaintiff's defamation claim because the plaintiff has failed to allege that Ms. Smith's

statements were false, see Def.'s Mem. at 14, and because the plaintiff's allegations regarding

the defendant's report to prospective employers fails to "identify the speaker, recipient, timing,

location, manner of communication, or the content of the statement," rendering the allegation

"deficient on its face[,]" id. at 14–15.  In response, the plaintiff merely states that "[t]he

statement was false," because he "was never told he failed his PIP, never received

documentation, and was terminated despite compliance[,]" Pl.'s Opp'n at 2, and that the

statement was "factual in nature, and caused reputational and financial harm, including rejection

by prospective employers[,]" id.

As an initial matter, although the Court agrees with the defendant that it could treat the

defendant's arguments for dismissal of the plaintiff's defamation claim as conceded because he

did not address many of the defendant's arguments in its motion to dismiss, see Def.'s Reply

at 9, the Court will nonetheless address the arguments out of an abundance of caution and also

due to the plaintiff's pro se status.

---

[6] In his opposition, the plaintiff fails to respond to the defendant's arguments for dismissal of his defamation claim based on this statement to a prospective employer, and instead represents that his defamation claim is based only on Ms. Smith's statement.  See Pl.'s Opp'n at 2 (explaining basis for his defamation claim).  Nonetheless, the Court will address this as a basis for his claim due to his pro se status, rather than treating the defendant's arguments as conceded.

To adequately allege a defamation claim, the plaintiff must show

(1) that the defendant made a false and defamatory statement concerning the plaintiff; (2) that the defendant published the statement without privilege to a third party; (3) that the defendant's fault in publishing the statement amounted to at least negligence; and (4) either that the statement was actionable as a matter of law irrespective of special harm or that its publication caused the plaintiff special harm.

Jankovic v. Int'l Crisis Grp., 494 F.3d 1080, 1088 (D.C. Cir. 2007) (quoting Croixland Props. L.P. v. Corcoran, 174 F.3d 213, 215 (D.C. Cir. 1999)).  A published statement is defamatory if the statement "tends to injure the plaintiff in his trade, profession, or community standing, or lower him in the estimation of the community."  Farah v. Esquire Mag., 736 F.3d 528, 534 (D.C. Cir. 2013) (citing Moss v. Stockard, 580 A.2d 1011, 1023 (D.C. 1990)).  "An allegedly defamatory remark must be more than unpleasant or offensive; the language must make the plaintiff appear odious, infamous, or ridiculous."  Luhn v. Scott, 843 F. App'x 326, 327 (D.C. Cir. 2021) (quoting Smith v. Clinton, 886 F.3d 122, 128 (D.C. Cir. 2018)).  "The plaintiff has the burden of proving the defamatory nature of the challenged statement."  Benz v. Wash. Newspaper Pub. Co., No. 05-cv-1760 (EGS), 2006 WL 2844896, at *3 (D.D.C. Sept. 29, 2006) (quoting Klayman v. Segal, 783 A.2d 607, 613 (D.C. 2001)).

Under D.C. law, there is no heightened pleading standard requiring the plaintiff to plead his defamation claim with specificity.  See Solers, Inc. v. Doe, 977 A.2d 941, 948 (D.C. 2009).  Instead, courts must determine "whether the factual allegations in the [plaintiff's] complaint are sufficient to permit [the defendant] to form responsive pleadings" in response to the plaintiff's defamation claim.  Id.[7]

---

[7] Although the D.C. Circuit has indicated in at least two cases that at the motion to dismiss stage, the Court "must assume, as the complaint alleges, the falsity of any . . . factual statements made[,]" Farah, 736 F.3d at 534 (quoting Weyrich v. New Republic, Inc., 235 F.3d 617, 623 (D.C. Cir. 2001)), at least one other member of this Court has noted that the D.C. Circuit did not explain how its prior propositions in Weyrich were affected by the Supreme Court's subsequent decisions in Twombley and Iqbal, see Libre By Nexus v. Buzzfeed, Inc., 311 F. Supp. 3d 149,

(continued . . .)

For the following reasons, the Court concludes that the plaintiff has failed to adequately plead his defamation claim. First, the plaintiff's allegation that the defendant communicated the plaintiff's purported "poor performance" to an unnamed prospective employer at some date after his termination, see Am. Compl. at 3, lacks any supporting factual information, such as which of the defendant's employees made that statement, to whom specifically they made that statement and when, and the content of that statement beyond the conclusory remark regarding his purported performance. Thus, although the plaintiff was not required to include all of that information in support of his claim, he has nonetheless still failed to allege sufficient facts to "permit [the defendant] to form responsive pleadings" in response to this allegation, Solers, Inc., 977 A.2d at 948; see also Ruifang Hu v. K4 Sols., Inc., No. 18-cv-1240 (TSC), 2020 WL 1189297, at *12 (D.D.C. Mar. 12, 2020) (concluding that allegations that statements were shared with unnamed potential employers were insufficiently detailed to state a claim for defamation) (citing Oparaugo v. Watts, 884 A.2d 63, 76–77 (D.C. 2005)), despite the Court's express instruction to amend his Complaint with further factual allegations regarding his claims, see Order at 4–5 (Aug. 26, 2025).

And, although the plaintiff's other allegation that Ms. Smith informed Ms. Tedrow "that [the p]laintiff had been terminated due to performance reasons[,]" Am. Compl. at 3, does have more detail regarding the circumstances surrounding the allegedly defamatory statement, the plaintiff's allegation nonetheless fails to state a viable defamation claim because even construing the Amended Complaint liberally and in the light most favorable to the plaintiff, as the Court must at this stage of the case, the plaintiff has failed to adequately allege that the statement was

---

(. . . continued)
155 n.2 (D.D.C. 2018). Therefore, because Weyrich relied on a more generous pleading standard subsequently repudiated by the Supreme Court in Twombley and Iqbal, the Court will apply the current pleading standard and require that the plaintiff plausibly allege that the statements were false.

14

false, even assuming arguendo that it was plausibly defamatory. The plaintiff expressly acknowledges that he was placed on a PIP because of purported performance issues "such as a 30-minute [delay in providing a Microsoft] Teams response, child-care related absences, and a disputed remote work schedule." Am. Compl. at 2. Similarly, the plaintiff alleges that he was criticized by his supervisors for failing to shadow another systems administrator when in reality the systems administrator "was rarely in the office, making training impossible." See id. The plaintiff contends that these criticisms were "trivial" or otherwise unfair, but he does not allege at any point, for example, that these purported performance issues were in fact false and that he had no such performance issues.

Moreover, although the plaintiff alleges that the defendant never informed him, in writing or otherwise, that he had failed to meet the requirements set forth in the PIP, see id. at 3, and that, to the contrary, "[h]e was terminated despite meeting [the PIP's] requirements[,]" id., he has provided no factual allegations to support his conclusory statement that his performance at the time of his termination as satisfactory. Without more, the Court cannot reasonably infer that Ms. Smith's comment was false, especially in light of the factual allegations contained in the Amended Complaint that appear to contradict his conclusory statements regarding the quality of his performance. See Am. Compl. at 2 (noting but not disputing his supervisor's criticism of the plaintiff's performance and absences). The plaintiff's failure to adequately support his conclusory statements of falsity, especially after the Court's prior order directing him to supplement the factual allegations in his original complaint, prevents the Court from concluding that Ms. Smith's purported statement regarding his termination for performance reasons was plausibly false.

Accordingly, having concluded that the plaintiff has not adequately alleged his defamation claim based on either of the two statements set forth in his Amended Complaint, the Court must grant the defendant's motion to dismiss the plaintiff's defamation claim.

## IV.    CONCLUSION

For the foregoing reasons, the Court concludes that it must grant the defendant's motion to dismiss.[8]

**SO ORDERED** this 30th day of April, 2026.[9]

REGGIE B. WALTON
United States District Judge

---

[8] The plaintiff also requests that the Court grant him leave to further amend his complaint under Federal Rule of Civil Procedure 15(a)(2), if the Court determines it must grant the defendant's motion to dismiss. See Pl.'s Opp'n at 2. However, "a bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which amendment is sought—does not constitute a motion within the contemplation of Rule 15(a)." Rollins v. Wackenhut Servs., Inc., 703 F.3d 122, 130 (D.C. Cir. 2012). The Court will therefore deny this request.

[9] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.